THE FRICK COMPANY v. J. D. FRY.

No. 14,944    (89 Pac. 675.)

SYLLABUS BY THE COURT.

SALES—*Warranty—Recission—Return of the Property Unnecessary under Supplemental Agreement.* Where a thrashing-machine is purchased from a company under a warranty, upon condition that if, after notice to the company and a fair trial, it cannot be made to comply with the warranty the purchaser shall return it to the place where it was received by him; and after a fair trial it is conceded that it does not conform to the condition of the warranty; and the purchaser refuses to pay for the machine; and a new and supplemental contract is made between the parties by which it is agreed that the purchaser will store the machine for the company for a fixed period of time, and that the company shall within that time put the machine in order so that it will perform its work in accordance with the warranty; and the company fails to make any repairs during the time specified; and upon the expiration of the time the purchaser declares the contract at an end, he will not then be compelled to return the machine before he can rely on a rescission.

Frick Co. v. Fry.

Error from Reno district court; PETER J. GALLE, judge. Opinion filed March 9, 1907. Affirmed.

### STATEMENT.

Two actions in replevin were commenced by the Frick Company against Joseph D. Fry—one as owner, to recover the possession of one J. I. Case traction-engine, the other as mortgagee, to recover the possession of a thrashing outfit, consisting of a traction-engine and separator, with attachments, and also two horses and nine head of cattle. Subsequently the actions were consolidated in the district court and tried as one cause. The defendant recovered judgment for a return of the J. I. Case engine and the horses and cattle, or the value of such property, and the plaintiff prosecutes error.

On July 9, 1903, Fry gave his written order to the Frick Company for a thrashing-machine outfit, consisting of a traction-engine and separator and attachments, for which he agreed to pay the sum of $1800 and deliver to the Frick Company one second-hand J. I. Case traction-engine. This order contained all the conditions of the sale and purchase of a thrashing-machine, and was accepted by the Frick Company and became a contract of sale and purchase between the parties. It contained the following warranty:

"Said machinery is warranted to be manufactured of good material and workmanship, and that it will, by proper management, perform as well as any other of the same size and rated capacity made for the same purpose."

Fry received the thrashing-machine at Hutchinson, Kan., removed it to his farm in Reno county, and undertook to thrash grain with it, but the separator was found to be defective. Notices of the defects were given the company and its agents, as provided in the contract of sale, and several attempts were made to remedy the defects by the Frick Company, but without success. Fry finally refused to pay the notes given for

the machine and refused to keep the machine. While matters were in this condition, and on September 10, 1903, the parties entered into the following written agreement:

"Whereas, said Fry has now in his possession one thrashing outfit bought of said Frick Company, comprising one 20-horse-power Frick traction-engine, one 36x56 Frick Landis Eclipse separator with Landis wind stacker and Hawkeye self-feeder, and Boss grain-weigher with belting; and,

"Whereas, said Fry claims that separator did not work satisfactory and he is unwilling to pay for same: Now, said Frick Company, in order to settle the said claims of Fry, agrees to put the separator in a first-class condition, by putting in new-style straw-racks, and stop the leaking, so the machine will do first-class thrashing and as good as is expected of any machine.

"The Frick Company also agrees to take off the grain-weigher and put on a first-class wagon-loader.

"All notes now due or to become due to be extended one year from the date upon which they become due.

"In relation to the old Case engine, which Frick Company was to take in part payment for the thrashing outfit, Fry is to keep the engine until the Frick Company places the outfit in a first-class condition. Then Fry is to either turn said engine to the Frick Company in as good condition as it now is, ordinary wear excepted, or its value in money, to wit, $300.

"This contract is supplementary to a contract dated July 9, and is not to change its terms except as herein specified.

"All this work is to be done by June 15, 1904. The Frick outfit to be kept under shed.

SHOCKEY & LANDIS,<br>
<em>Agents for Frick Co.</em><br>
JOSEPH D. FRY."

Conformably to this agreement Fry stored the machine on his farm, and nothing more was done in the matter until the 14th of June, 1904, when the local agent of the Frick Company at Hutchinson called on Fry and asked for an extension of time to place the machine in order in compliance with the agreement of September 10, 1903. This request Fry refused. About

June 27, 1904, some articles for repairing the machine were delivered at Fry's farm, and men were sent there by the company to make the repairs. At that time Fry informed them that they need not make the repairs for him; that the time provided for in the contract within which the machine should be repaired had expired; and that he was under no obligation to keep the machine. Between that time and July 19, 1904, the plaintiff claimed that it put the machine in order and made all the repairs which it had agreed to make under the contract of September 10, 1903. Fry always refused to have anything to do with the machine after his conversation with the plaintiff's agent on June 14, 1904.

The machine remained on Fry's farm until it was taken therefrom by the sheriff in the replevin action. Fry made no defense in the action to the right of the plaintiff to the possession of the thrashing outfit which he had received, but claimed that because of the breach of the warranty and the supplemental contract the sale was rescinded, and that as the plaintiff had failed to perform the conditions of the supplemental contract within the time specified in the contract he was released from any obligation to accept the machine; that he had not accepted it, and was therefore not indebted to the plaintiff; and he asked for judgment for a return of the property taken under the writ of replevin, other than the machine, or the value thereof.

*Fairchild & Lewis,* for plaintiff in error.

*Prigg & Williams,* and *Hettinger & Hettinger,* for defendant in error.

The opinion of the court was delivered by

GREENE, J.: It is contended that the court erred in overruling plaintiff's demurrer to defendant's evidence, because of a failure of proof that he had returned or offered to return the machine to the place where he had received it. Under the original contract, before

the defendant could rescind he was required to return the machine.

The law is well settled in this state that where a machine is purchased, as this machine was, there can be no rescission until the property is returned to the place where it was received. The machine in question was defective, and notwithstanding ample opportunity had been given the plaintiff to make it do satisfactory work, and in this respect fulfil the conditions of the warranty, all efforts had failed; and because of this failure Fry refused to pay for the machine. Because of this condition a new, or supplemental, agreement was entered into on September 10, 1903, by which Fry agreed to store the machine for the plaintiff until June 15, 1904, it agreeing, as stated in the contract, "to put the separator in a first-class condition, by putting in new-style straw-racks, and stop the leaking, so the machine will do first-class thrashing and as good as is expected of any machine." This was to be completed by June 15, 1904.

It is stated in the agreement that this supplemental contract is not to change any of the terms of the purchase contract except as therein specified. Under this clause it is contended that the provision of the purchase contract that the defendant must return the machine before he can rescind still remained in force. With this we do not agree. Notwithstanding this provision the supplemental contract of necessity changed the relation of the parties, and with these changed relations different obligations arose. Before this contract was made Fry was in possession of the machine, as owner, and before he could have claimed a rescission he would have had to return the machine and surrender that claim of ownership. By the terms of the new contract his possession as owner was changed to a possession for the use of the plaintiff, for a definite time, and a particular purpose. A compliance by the company with the conditions of this agreement, within the time specified, might have resulted in restoring to Fry the

possession of the machine as owner, but until the plaintiff had fully complied with its agreement Fry's possession of the machine was the possession of the company. In the contract changing the nature of Fry's possession no obligation was imposed upon him to return the machine to the place where he received it in case the company failed to fulfil its agreement. The evidence was conclusive that the plaintiff did not attempt to comply with its contract to repair and put the machine in proper order on or before June 15, 1904, and it is equally conclusive that upon such failure Fry promptly declared the contract at an end. This was all that was required of him to terminate his contractual relations with the plaintiff and entitle him to claim a rescission.

Objections are urged to the refusal of the court to give a number of instructions requested by the plaintiff, and also to the giving of instruction No. 7. Of those requested, some contain erroneous statements of law and others were inapplicable to the facts; and we find no error in the giving of instruction No. 7. Nor do we find any prejudicial error in the refusal of the court to set aside the special findings of the jury excepted to by the plaintiff.

The judgment is affirmed.